**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOANNA LIN AGUILAR,

        Plaintiff,                        Case No. 18-cv-11077

        v.                                 District Judge Gershwin A. Drain

COMMISSIONER OF                  Magistrate Judge Mona K. Majzoub
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Joanna Lin Aguilar seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that she is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 14). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.     RECOMMENDATION**

        For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 14) be **GRANTED**, and that the case be dismissed in its entirety.

## II. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on March 5, 2015, alleging that she has been disabled since January 27, 2014. (TR 158–59.) The Social Security Administration initially denied Plaintiff's claims on March 4, 2015. (TR 93–96.) On November 9, 2016, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Michael R. Dunn. (TR 34–75.)

On May 1, 2017, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 15–29.) Plaintiff requested review by the Appeals Council, which was denied on February 6, 2018. (TR 1–3.) On April 3, 2018, Plaintiff commenced this action for judicial review. (Docket no. 1.) The parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 13; docket no. 14.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of her medical issues. (Docket no. 13, pp. 3–14.) In addition, the ALJ summarized Plaintiff's medical record (TR 17–27), and Defendant adopted the ALJ's recitation of the facts (docket no. 14, p. 4). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019 and did not engage in substantial gainful activity since January

27, 2014, the alleged onset date. (TR 17.) In addition, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine with spondylolisthesis, degenerative joint disease of the bilateral knees, morbid obesity, fibromyalgia, and affective disorder." (*Id*.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR 18.) The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), subject to the following non-exertional limitations:

- Plaintiff can never climb ladders and scaffolds.
- Plaintiff can occasionally climb ramps and stairs up to one flight with the use of a handrail.
- Plaintiff can occasionally stoop, kneel, crouch, and crawl.
- Plaintiff requires a sit/stand option, defined as there is work that can be done in both the sitting and standing positions, such that the change in position will not cause the worker to go off task. After sitting for 30 minutes, Plaintiff should have the option to stand for up to 30 minutes; after standing for 30 minutes, Plaintiff should have the option to sit for up to 30 minutes.
- Plaintiff is limited to work involving simple, routine, and repetitive unskilled tasks performed at Specific Vocational Preparation (SVP) levels 1 or 2 as defined in the Dictionary of Occupational Titles (DOT), free of fast-paced production requirements and with few, if any, workplace changes.
- Plaintiff can tolerate occasional interaction with the public.

(TR 20.) Based on this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of jobs that exist in significant numbers in the national economy, including printed circuit checker, rotor assembler, and surveillance systems monitor. (TR 28–29.) Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since the alleged onset date. (TR 29.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the

conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

Plaintiff contends that the ALJ failed to give good reasons for discounting the opinion of her treating physician, Dr. Rommel Aquino. (Docket no. 13, pp. 15–19.) Plaintiff also asserts that

5

the ALJ's RFC is not supported by substantial evidence. (*Id.* at 19–22.) The undersigned addresses these objections in turn below.

### 1. Analysis of Dr. Aquino's Opinions

Under the treating physician rule, the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

If the ALJ declines to give a treating source's opinion controlling weight, she must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). But the ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide "good reasons" for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017); 20 C.F.R. § 404.1527(d)(2). Such good reasons must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p (S.S.A. July 2, 1996).

From January through April of 2014, Dr. Aquino issued seven letters stating that Plaintiff was "excused from work due to illness" related to her back condition. (TR 271–77.) On September 25, 2015, Dr. Aquino opined that Plaintiff could not perform "substantial gainful

6

activity on a sustained basis at any exertional level for 8 hours per day, 40 hours per week for 50 weeks per year." (TR 303.) The ALJ gave little weight to these opinions because "the determination of whether a claimant is disabled is an issue that is reserved to the Commissioner." (TR 25.) Plaintiff does not object to that conclusion. (Docket no. 13, p. 16.)

However, Dr. Aquino also recommended specific limitations in Plaintiff's ability to perform occupational activities. On June 17, 2014, Dr. Aquino opined that Plaintiff could not push, pull, lift or carry greater than ten pounds. (TR 233.) On December 18, 2014, Dr. Aquino proposed that Plaintiff could not push or pull even ten pounds, could sit for two hours, stand for thirty minutes and walk for thirty minutes in an eight-hour workday, and could never climb, twist, bend, or stoop. (TR 305.) Finally, on November 21, 2016, Dr. Aquino asserted that in an eight-hour workday Plaintiff would need to "rest intermittently for a total of 5 hours." (TR 325.)

The ALJ agreed that Plaintiff could lift no more than ten pounds, but declined to adopt the other limitations proposed by Dr. Aquino. (TR 25.) In support, the ALJ stated that "the medical evidence of record does not support the limitations identified by Dr. Aquino." (*Id.*) In particular, the ALJ noted that Plaintiff "reported a significant reduction in pain following injections that allowed her to stand and walk longer and had even allowed her to take her children to an amusement park, staying on her feet for 45 minutes or more before having any difficulties" and that Plaintiff's "gait was frequently assessed as non-antalgic." (*Id.*) The ALJ further emphasized that "Dr. Aquino did not send [Plaintiff] for further pain management, neurosurgical consultation, or rheumatology consultation." (*Id.*)

On review of the record, the ALJ adequately explained why he declined to adopt the bulk of Dr. Aquino's proposed limitations. As detailed in the ALJ's decision, Plaintiff saw Dr. Aquino several times in 2014 regarding back pain. (TR 22.) Dr. Aquino referred Plaintiff to Dr. Tahil

Jamil, who observed in March of 2014 that Plaintiff demonstrated "possible exaggerated pain behaviors" which were "out of proportion to [the] exam findings." (TR 284.) In May of 2014, Plaintiff underwent bilateral sacroiliac joint injections with Dr. John Kohn. (TR 243.) After a second injection in June of 2014, Plaintiff reported that her lower back pain had decreased by fifty percent. (TR 242.) Dr. Kohn reported that Plaintiff was "relatively comfortable" and decided to forgo additional injections in favor of exercises that would strengthen, condition and stretch her back. (*Id.*)

In August of 2014, Plaintiff visited Dr. Aquino "to fill disability papers." (TR 253.) During that visit, Dr. Aquino recorded that Plaintiff continued to suffer from lumbar degenerative disc disease and renewed her prescription for naproxen. (TR 254.) At the end of the visit, Plaintiff "set a health goal of physical activity." (*Id.*) In December of 2014, Plaintiff again visited Dr. Aquino with the goal of obtaining disability paperwork. (TR 249.)

As the ALJ noted, Plaintiff did not see Dr. Aquino again until January of 2016. (TR 23.) Throughout that year, Dr. Aquino recommended a conservative course of treatment, including physical therapy and medication. (TR 326–49.)

The ALJ explained that Dr. Aquino's proposed limitations were inconsistent with Plaintiff's medical records which showed: (1) improvement with steroid injections, followed by (2) a gap in treatment of more than a year, followed by (3) relatively conservative treatment. Accordingly, the ALJ stated good reasons for declining to adopt Dr. Aquino's proposed limitations.

       *2. Substantial Evidence*

Plaintiff also contends that the RFC is not supported by substantial evidence. (Docket no. 13, pp. 19–22.)

In particular, Plaintiff asserts that the ALJ should have adopted limitations proposed by physical therapist Mike Brew. (TR 307–16.) Mr. Brew recommended that Plaintiff be limited to sitting and standing for twenty minutes at a time, lifting and carrying up to twenty pounds rarely, up to ten pounds occasionally, and up to five pounds frequently, rarely performing forward bending or kneeling, occasionally performing elevated work or standing work, occasionally crouching, occasionally climbing stairs, occasionally walking for up to six minutes at a time, and occasionally sitting. (*Id.*)

The ALJ assigned little weight to Mr. Brew's proposed limitations because Mr. Brew is "not a medically acceptable source" and because his opinion "appear[ed] to he based upon [Plaintiff's] self-reporting of pain." (TR 23.) The ALJ also observed that Mr. Brew "recommended physical therapy to increase the level of functioning." (*Id.*)

As the ALJ noted, Mr. Brew's examination was based primarily on Plaintiff's self-reported pain levels. For example, in summarizing Plaintiff's performance on a test of her ability to work while standing, Mr. Brew stated:

> Patient completed less than 20 minutes of the task and was observed frequently changing her posture and positioning during the task due to increasing lower back and left lower extremity pain. Posture/position changes increased in frequency as the task progressed including asymmetrical weight bearing through the left lower extremity.

(TR 310.)

Similarly, on a test of sitting ability, Plaintiff "was observed frequently changing her posture and positioning during the task due to increasing lower back and left lower extremity pain." (TR 311.)

9

Substantial evidence supports the ALJ's determination that Mr. Brew's proposed limitations are not supported by objective medical testing. Accordingly, the ALJ did not err by declining to adopt those limitations.

Plaintiff additionally asserts that the ALJ's RFC cannot be supported by substantial evidence because the ALJ discredited (either partially or fully) every medical opinion in the record. (Docket no. 13., pp. 21–22.) However, as Plaintiff acknowledges, one of the opinions partially discredited by the ALJ—Dr. Kuiper's state-agency assessment—was actually less restrictive than the ALJ's RFC. (Docket no. 13, p. 21.) This negates Plaintiff's assertion that the ALJ "did not rely upon the findings or opinions of any doctor or 'other source.'" (*See id.*) In fact, the ALJ relied partially on several medical sources. Plaintiff advances no support for the implication that the ALJ must adopt wholesale the recommendations of any particular physician.

## VI. CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 14) be **GRANTED**, and that the case be dismissed in its entirety.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and

Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 4, 2019                    s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: June 4, 2019                    s/ Leanne Hosking
                                       Case Manager

11